# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 6:13-cr-00012-1 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GETONY BARNETTE, | ) | By: Norman K. Moon |
| Petitioner. | ) | United States District Judge |

Petitioner Getony Barnette, a federal inmate proceeding *pro se*, filed this motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging his 51-month sentence for mail theft, bank fraud, and aggravated identity theft. Barnette claims that counsel provided ineffective assistance by allowing him to plead guilty to aggravated identity theft when he was actually innocent of that charge. The government filed a motion to dismiss and Barnette responded, making this matter ripe for consideration. I conclude that Barnette's ineffective assistance of counsel claims do not meet both the performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668, 669 (1984). I further conclude that Barnette has failed to demonstrate actual innocence of aggravated identity theft. Therefore, I will grant the government's motion to dismiss.

## I.

On June 11, 2013, Barnette waived indictment and was charged in a two-count Information. Count One alleged that Barnette conspired to steal checks from mail receptacles, altered the stolen checks, and then cashed the checks at federally insured financial institutions, in violation of 18 U.S.C. § 371. Count Two (aggravated identity theft) alleged that Barnette knowingly possessed and used, without authority, a means of identification of another person, specifically, the name and signature of account signatories on the collective entity's band accounts, in relation to bank fraud, in violation of 18 U.S.C. § 1028A(a)(1) and (2). Barnette

pleaded guilty to Counts One and Two of the Information and a plea agreement was filed with the court pursuant to Rule 11 of the Federal Rules of Criminal Procedure, which was fully endorsed by Barnette, his counsel, and the Assistant United States Attorney. The plea agreement provided, "I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel . . . ." It further provided, "I willingly stipulate there is a sufficient factual basis to support each and every material factual allegation contained within the charging document(s) to which I am pleading guilty."[1]

On September 3, 2013, I conducted Barnette's sentencing hearing, where Barnette was present with counsel. I adopted the Presentence Investigation Report ("PSR") without change and the parties did not object. The PSR determined that there was a mandatory two-year term of imprisonment for Count Two. I imposed a sentence of 51 months, which consisted of 27-months on Count One and 24-months on Count Two, to run consecutively.[2]

## II.

To state a claim for relief under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Barnette bears the burden of proving grounds for a

---

[1] The plea agreement also provided that the government agreed to recommend a sentence at the low end of the applicable guideline range and recommend a three-level reduction for acceptance of responsibility.

[2] The PSR found that, had Barnette gone to trial and been found guilty, he may not have earned the three-level reduction for acceptance of responsibility, and thus would have had a guideline imprisonment range of 37 to 46 months for Count One, based on a total offense level of 17, and a criminal history category of IV. However, because of the plea agreement the guideline imprisonment range for Count One was 27 to 33 months, based on a total offense level of 14, and a criminal history category of IV. The guideline sentence for Count Two was the minimum term of imprisonment (24 months consecutive) required by statute. United States Sentencing Guidelines § 2B1.6.

collateral attack by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965); *Hall v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

### III.

Barnette claims that counsel provided ineffective assistance by allowing him to plead guilty to aggravated identity theft when he was actually innocent of that charge.[3] Barnette also alleges related claims that counsel was ineffective for failing to: (1) investigate the facts and law; (2) argue actual innocence; and (3) appeal his conviction. Barnette argues he is actually innocent of aggravated identity theft "because [*United States v. Hilton*, 701 F.3d 959 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 1839 (2013)] held that aggravated [identity] theft does not apply to corporations." He states, "[t]he bottom line is, *Hilton* applies to [Barnette's] conduct where he stole corporate ch[e]cks and the corporation's identity. The Corporation was the only victim of the identity theft and [the government's argument] that the agents for the corporations are somehow now the victims must be rejected." The government distinguishes *Hilton* on its facts and asserts that "Barnette's unauthorized use of both the names and signatures of account signatories was properly charged and appropriately prosecuted under [§ 1028A]." As discussed below, Barnette's claims are meritless and will be dismissed.

To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. *Strickland*, 466 U.S. at 669. Courts apply a strong presumption that counsel's performance was within the range of reasonable

---

[3] Barnette's motion to amend his § 2255 to add a new claim that he is actually innocent of aggravated identity theft was granted on October 24, 2014. Thus, it appears that Barnette is attempting to make a freestanding claim of actual innocence. Whether a freestanding claim of actual innocence is cognizable in a habeas action unaccompanied by assertion of an independent constitutional violation remains unsettled in the Fourth Circuit. *See Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999). In light of this, and because Barnette is acting *pro se*, the court will liberally construe his pleadings to assert a companion claim that counsel provided ineffective assistance. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, as discussed in this opinion, I find that Barnette has not shown he was actually innocent of aggravated identity theft.

professional assistance. *Id.* at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance; that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In the plea context, the *Strickland* prejudice inquiry focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) "([I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.") The petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, 956 F.2d at 1297 (citing *Hutchins*, 724 F.2d at 1430-31).

Barnette's claim that he is dissatisfied with counsel's representation because he is actually innocent of aggravated identity theft is directly contradicted by Barnette's affirmance under oath during his plea colloquy that he was satisfied with counsel's representation and the advice given him by his counsel. During the plea colloquy, the government summarized the elements of the offense of aggravated identity fraud, and Barnette confirmed that he understood the elements of that offense. Barnette further affirmed that he had, had ample time to consult with his attorney and that he wanted to plead guilty. Following the government's summary of the evidence against him, Barnette pleaded guilty.[4] Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or

---

[4] Barnette's plea agreement also states that he is pleading guilty because he is in fact guilty.

- 4 -

false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted).

Further, Barnette cannot show counsel provided ineffective assistance because Barnette's claim that his conduct did not constitute aggravated identity theft fails. Counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." *See Clanton v. Bair*, 826 F.2d 1354, 1359 (4th Cir. 1987). Barnette is not actually innocent of aggravated identity theft under *Hilton* because the facts in *Hilton* are distinguishable from the instant case. The aggravated identity theft statute, § 1028A, provides, in relevant part:

> (1) In general. Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, *a means of identification of another person* shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1) (emphasis added). The term "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). [5]

In *Hilton,* the Court of Appeals posed the following question:

> [W]e must determine whether the phrase "means of identification of another person," as used in the identity theft statutes, encompasses the unauthorized use of the identification of corporations, when the term "means of identification" is defined by statute as referring to the identity of "specific individual[s]."

---

[5] Section 1028(d)(7) lists the following as examples of a "means of identification":

(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;
(C) unique electronic identification number, address, or routing code; or
(D) telecommunication identifying information or access device

.

- 5 -

*Id*. at 967. The court then concluded that "the identity theft statutes are fatally ambiguous regarding whether they include as a criminal offense the unauthorized use of the means of identification of a corporation" and vacated the defendants' convictions under § 1028A. *Id*. at 969. However, as discussed below, the *Hilton* defendants' fraudulent acts are distinguishable from Barnette's.

In *Hilton* the defendants defrauded a small furniture manufacturer, The Woodsmiths Company ("Woodsmiths"), by stealing and cashing numerous checks written to Woodsmiths by its customers. Defendant Tamatha Hilton ("Tamatha") was employed as Woodsmith's office manager and she participated in the fraud by sending company invoices to customers, requesting payment. When the checks arrived, instead of depositing them into the company's bank account, Tamatha gave them to her husband, co-defendant Jimmy Hilton ("Jimmy"), who endorsed the stolen checks with a custom, pre-printed stamp and completed corresponding deposit slips. A third defendant, Jimmy's former wife, Jacqueline Hilton ("Jacqueline") deposited the checks into a bank account that she had opened for the purpose of perpetrating the fraud.[6] Before the thefts began, Jacqueline had opened a bank account in her name, falsely claiming to be the owner of a business called Woodsmiths Furniture Company, and purchased the pre-printed stamp with the following inscription: Pay to the order of Suntrust Bank 053100465. For deposit only Woodsmiths 1000036388063.

Thus, in *Hilton,* the defendants used a fake corporate stamp, which did not contain an individual's signature, to endorse stolen checks that they later deposited. They did not obtain a means of identification (i.e. a signature) from any specific individual. Indeed, the issue specifically considered by the Court of Appeals was whether "means of identification of another

---

[6] During the course of the scheme, the *Hilton* defendants stole approximately 168 checks in the aggregate amount of about $655,000.

person" encompassed the unauthorized use of the identification of corporations (i.e. the custom pre-printed stamp). *Id.* at 967. The court held it did not. In contrast, Barnette was charged with and pleaded guilty to using, without authority, the name and signature of *account signatories* on collective entity's band accounts.[7] Count Two charged, as follows:

> From on or about January 1, 2012 and continuing thereafter until on or about at least August 8, 2012, in the Western District of Virginia, the Defendant, GETONY BARNETTE, did knowingly possess and use, without authority, a means of identification of another person, that is the name and signature of *account signatories* on collective band accounts, during and in relation to a felony violation enumerated in Title 18 United States Code, Section 1028A(c), that is bank fraud, as referenced in Overt Acts 2 through 21 of this Information.

Thus, Count Two identified the account signatories, not the collective entities, as the victims of the aggravated identity theft in violation of 18 U.S.C. § 1028A.[8]

The *Hilton* court unmistakably concluded that, by enacting § 1028A, Congress intended to protect natural persons, and not corporate victims. *Hilton*, 701 F.3d at 968-969 ("although the effects of identity theft may be financially devastating to corporations, we cannot discern any evidence from the text of the statute indicating that Congress intended to protect corporate victims as well as natural persons."). Barnette argues, "[t]here's nothing about the instant case to suggest that the victim of this identity fraud was anything other than the corporation" and "the

---

[7] The government characterizes Barnette's criminal activities as follows:

> Barnette was the leader in a criminal enterprise that stole mail, altered checks contained in the stolen mail, and committed identity fraud. The stolen checks were altered to make the checks payable to "straw" cashers, allowing the "straw" cashers to cash the checks using their own identity documents. Although the name on the "Pay To The Order Of" line was altered, and in some cases the amount of the check was increased, Barnette did not alter the name and signature on the Signature Line of each check.

The checks belonged to "numerous collective agencies" including corporations and collective entities that were not incorporated, such as Highland Ridge Rehab Center, LLC and the Bedford County Public Services Authority.

[8] During the plea hearing, the government stated that, "Each of the checks contained the signature of the authorized signatory on the account. Absent that signatory, the financial institutions . . . would not have cashed any of these altered checks."

- 7 -

checks the government stated were stolen were either corporate checks or checks belonging to an agency, organization, or entity, not a natural person."

However, *Hilton's* holding does not support Barnette's actual innocence claim because the account signatories, set forth in Count Two of the Information, are natural persons and were victims of the identity theft perpetrated by Barnette.[9] As the government argues in its brief, check signatories "can be held liable or subject to criminal sanctions for signing checks drawn fraudulently or illegally."

In *United States v. Johnson*, 261 F. App'x 611 (4th Cir. 2008), the Court of Appeals upheld the § 1028A conviction of a defendant found in possession of counterfeits of checks issued by Gail Brinn Wilkins, who owned a business called "Gail Brinn Wilkins, Incorporated." Like Barnette, the *Johnson* defendant argued that he could not be convicted of aggravated identity theft because he had not stolen the identity of a natural person. *Id.* at 613. However, the court did not directly address the issue of whether Congress meant to limit aggravated identity theft to those involving natural persons, and not corporations. Instead, the Fourth Circuit held that the use of the name of the natural person "Gail Brinn Wilkins" in the company's title was sufficient to satisfy the "means of identification" element and to support a conviction under Section 1028A. *Id.* at 614. Significantly, the court further found that the "use of Ms. Wilkin's name as the signatory on the [corporate] checks is sufficient to identifty a specific individual under the statute." *Id*. I conclude that the facts of the instant case are more similar to the facts in

---

[9] The *Hilton* court cited to the legislative history of § 1028A to support the conclusion that Congress intended to protect natural persons exclusively from identity theft. 701 F.3d at 969 (Noting comments of congressman, including "[i]dentity theft occurs when an individual's personal information is stolen and then used fraudulently for economic gain" and "[a] victim of identity theft usually spends a year and a half working to restore his or her identity and good name" (internal citations omitted) (emphasis added). These concerns apply, at least to some extent, to the theft of the signature of an account signatory who signs a corporate check. Though the account signatory does not suffer financial loss due to the fraud, he or she is still a victim of the theft of personal identifying information, i.e. a signature.

- 8 -

Case 6:13-cr-00012-NKM   Document 63   Filed 06/23/15   Page 8 of 10   Pageid#: 253

*Johnson* than *Hilton*, and like the defendant in *Johnson*, Barnette was properly convicted under § 1028A.

Barnette also argues that because he "never forged a signature" he is "actually innocent" of identity theft under § 1028A. The government concedes that Barnette did not forge the signature on the stolen checks; instead, he altered the payee name, leaving "untouched the signature of the person authorized to sign the check." However, Barnette's attempt to distinguish his case on this ground fails, as § 1028A does not limit its reach to forgery of a "means of identification," but rather criminalizes the knowing transfer, possession, or use, of a "means of identification" of another person without lawful authority.[10] *See* 18 U.S.C. § 1028A(a)(1).

Accordingly, I conclude that Barnette has not shown that counsel was ineffective for allowing him to plead guilty to aggravated identity theft or for failing investigate the facts and law, argue actual innocence, or appeal his conviction.[11]

### IV.

For the reasons stated herein, I will grant the government's motion to dismiss.

---

[10] In *United States v. Blixt*, the United States Court of Appeals for the Ninth Circuit held "as a matter of first impression that forging another's signature constitutes the use of that person's name and thus qualifies as a 'means of identification' under 18 U.S.C. § 1028A," and other circuits have endorsed this view. 548 F.3d 882, 886 (9th Cir. 2008); *see also United States v. Porter*, 745 F.3d 1035, 1042 (10th Cir. 2014) ("a signature is a form of 'name' for purposes of § 1028(d)(7)'s definition of "means of identification."); *see also United States v. Lewis*, 443 F. App'x 493, 496 (11th Cir. 2011) ("As the signature of an individual's name specifically identifies that individual, we conclude that forging another's signature constitutes the use of a "means of identification.").

[11] Barnette does not claim that he asked counsel to appeal his conviction. Thus, the relevant inquiry is, "whether the circumstances would reasonably have led counsel to conclude that 'a rational defendant would want to appeal,' prompting counsel's duty to consult." *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). A defendant's expression of an interest in appealing, without more, does not establish that he would have appealed but for counsel's deficient performance. *Flores-Ortega*, 528 U.S. at 486. Barnette fails to demonstrate that the circumstances would have reasonably led counsel to conclude that a rational defendant would want to appeal. Barnette also fails to demonstrate prejudice.

**ENTER:** This __23rd__ day of May, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE